**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JUDY A. FARRELL,**

                   **Plaintiff,**           **7:12-cv-418**
                                            **(GLS)**

       **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                   **Defendant.**

_____

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Conboy, McKay Law Firm        LAWRENCE D. HASSELER,
307 State Street                 ESQ.
Carthage, NY 13619

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    VERNON NORWOOD
United States Attorney          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

# I. Introduction

Plaintiff Judy A. Farrell challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)[1]  After reviewing the administrative record and carefully considering Farrell's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

# II. Background

On August 7, 2007, Farrell filed an application for DIB under the Social Security Act ("the Act"), alleging disability since August 15, 2006.  (*See* Tr.[2] at 90, 125-32.)  After her application was denied, (*see id.* at 92-95), Farrell requested a hearing before an Administrative Law Judge (ALJ), which was held on April 21, 2010, (*see id.* at 46-89, 98).  On July 7, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social

---

[1] Because no application for Supplemental Security Income (SSI) appears in the record and it is otherwise clear that Farrell's request for review pertains only to her application for DIB, the court ignores the mistaken reference to SSI in her complaint.  (*See* Compl. ¶ 2.)

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 9.)

Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 14-34.)

Farrell commenced the present action by filing her Complaint on March 7, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 14, 17.)

### III. **Contentions**

Farrell contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 14 at 9-24.) Specifically, Farrell claims that the ALJ: (1) improperly assessed the severity of her chronic obstructive pulmonary disorder (COPD) and migraine headaches; (2) failed to apply the treating physician rule; (3) erred in evaluating her credibility; (4) failed to properly apply the psychiatric review technique; (4) improperly determined her residual functional capacity (RFC); and (5) made a step five determination that was unsupported by substantial evidence. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his

decision is also supported by substantial evidence.  (*See* Dkt. No. 17 at 15-24.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 14 at 1-8; Dkt. No. 17 at 2-12.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.    Severity Determination

Farrell first contends that the ALJ failed to properly assess the severity of her COPD and chronic migraines.  (*See* Dkt. No. 14 at 9-11.)  According to Farrell, the ALJ should not have considered the fact that she continues to smoke because "there is no medical opinion which asserts

that her smoking has caused or exacerbated" her COPD.  (*Id.* at 10.)  In addition, Farrell argues that her testimony coupled with emergency room treatment records from September 2002 and April and June 2006 demonstrate that her headaches have more than a minimal impact on her ability to work.  (*See id.* at 11.)  The court disagrees.

A claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including "functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as "[u]nderstanding, carrying out, and remembering simple instructions."  20 C.F.R. § 404.1521(b)(1), (3).  "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y.

Mar. 27, 2008)).  Indeed, when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities," a finding of "not severe" is warranted.  SSR 85-28, 1985 WL 56856, at *3 (1985); *see* 20 C.F.R. § 404.1521(a).

Here, the ALJ determined that, although Farrell had been diagnosed with COPD, it was not a severe impairment under the regulations because it was controlled by medication.  (*See* Tr. at 20.)  The ALJ further explained that, upon examination by consultative examiner Brij Sinah, Farrell's chest was clear to auscultation and percussion and there was no wheeze or rhonchi heard.  (*See id.* at 20, 304.)  In addition, a pulmonary function test administered in October 2007 revealed only mild obstruction.  (*See id.* at 20, 305, 308.)  Finally, the ALJ noted that Farrell continues to smoke half of a pack of cigarettes a day, despite her alleged breathing difficulties. (*See id.* at 20, 74.)

Contrary to Farrell's argument that no medical source opined that smoking caused or exacerbated her COPD, in May 2005 she was diagnosed with acute COPD exacerbation and counseled to stop smoking and in August 2009 she was diagnosed with COPD secondary to tobacco use.  (*See id.* at 319-22, 469, 473.)  Moreover, an ALJ can properly

consider a claimant's failure to quit smoking as impacting on the credibility of her complaints of disabling respiratory problems. *See Goff v. Astrue*, No. 09-CV-1392, 2012 WL 1605574, at *11 (N.D.N.Y. May 8, 2012). However, "a claimant's failure to quit smoking will generally be an unreliable basis on which to rest a credibility determination," due to the addictive nature of smoking. *Id.* at *11-12 (internal quotation marks and citations omitted). Nevertheless, the ALJ's consideration of Farrell's failure to quit smoking, along with all the other evidence of record, is not a basis for remand. Indeed, throughout the relevant time period, upon examination, Farrell's lungs were clear, spirometry testing in July 2005 showed no objective evidence of COPD, chest x-rays in June and September 2006 revealed that her lungs were clear and no acute disease was identifiable, and, in October 2008, Farrell reported occasional shortness of breath "when she really exerts herself." (Tr. at 480; *see id.* at 257, 268, 304-05, 456, 460, 466, 468-72, 474-81, 498, 516, 542, 551, 554, 575, 585, 588.) Thus, substantial evidence[3] supports the ALJ's conclusion that Farrell's COPD did not significantly limit her physical ability to do basic

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

work activities.

With respect to her migraine headaches, the ALJ also determined that they were not severe due to a lack of medical evidence that they significantly limited Farrell's ability to work. (*See id.* at 20.) In fact, the medical evidence during the relevant period was largely devoid of complaints or exam findings with respect to headaches. Although Farrell testified that she continued to suffer headaches two to three times per month, and that she seeks emergency room care when they last longer than two days, (*see id.* at 78), the record does not contain any emergency room treatment notes during the relevant time period related to Farrell's headaches. Thus, the court affirms the ALJ's step two findings.

## B.    Treating Physician Rule

Next, Farrell argues that the ALJ failed to afford the proper weight to the opinions of her treating sources. (*See* Dkt. No. 14 at 11-14.) Specifically, Farrell contends that the ALJ was required to accept the opinions of her workers' compensation treatment provider Shara Peets and her treating physician Bedros Bakirtzian that she could not work. (*See id.*) Again, the court disagrees.

Controlling weight will be given to a treating source's opinion on the

nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

Here, the record contains treatment notes from Dr. Bakirtzian from September 2006 through May 2007. (*See id.* at 294-98.) During this time, Farrell was neurologically intact with respect to sensation and muscle

strength, but she suffered reduced range of motion of her back and straight leg raising was, at times, positive on the right.  (*See id.*)  On September 6, 2006, Dr. Bakirtzian advised that Farrell was to continue to remain off work, until the results of an EMG study were obtained.  (*See id.* at 298.)  Thereafter, the EMG study revealed normal results, however, Dr. Bakirtzian continued to advise that Farrell "remain off work."  (*Id.* at 295-96.)

In making his determination, the ALJ considered the opinions of various treating sources, including Dr. Bakirtzian, that Farrell was "disabled, temporarily disabled, partially disabled, disabled from her regular work, could not return to work, or should remain off work."  (*Id.* at 26 (internal citation marks omitted).)  However, the ALJ correctly noted that these are opinions on issues reserved to the Commissioner, as opposed to opinions on the nature or severity of Farrell's impairments, and, therefore, he failed to grant them "any special significance."  (*Id.*); *see* 20 C.F.R. § 404.1527(d).  Although, the ALJ did not specifically mention the opinion of Dr. Peets that Farrell should "[c]ontinue no work," the ALJ is not required to discuss all of the evidence submitted and a failure to do so does not indicate that the evidence was not considered.  (Tr. at 543); *see Craig v.*

*Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).  Moreover, one week after opining that Farrell should remain off work, and prior to Farrell's alleged onset date, Dr. Peets advised that Farrell could "return to level [one] work with no twisting or prolonged standing."  (Tr. at 544.)  Thus, Farrell's arguments with respect to the opinions of Drs. Bakirtzian and Peets are without merit.

Contrary to Farrell's arguments, the opinions of several medical sources support the ALJ's determination that she was not disabled.  (*See* Dkt. No. 14 at 13.)  In addition to Dr. Peets' June 28, 2006 opinion that Farrell could return to work with some limitations, physician Louis Benton opined in February 2007 that Farrell "could return to a light sedentary work," but could not bend from the lumbar spine and could not lift more than fifteen pounds.  (Tr. at 444; *see id.* at 544.)  Further, in February 2008, physician Neal Zirn opined that Farrell was "able to perform sedentary work with the following restrictions: sitting no more than [twenty] minutes at a time, with breaks as necessary for comfort; no repetitive bending or twisting; and no lifting over ten pounds."  (*Id.* at 438.)  Finally, in June 2008, treating physician Karinka Romanowska opined that Farrell could do sedentary work.  (*See id.* at 427.)

## C.   Credibility Determination

Farrell next argues that the ALJ failed to properly evaluate her subjective allegations of pain and disabling symptoms as required by the Regulations.  (*See* Dkt. No. 14 at 14-17.)  According to Farrell, the ALJ erred because he failed to: (1) note treatment records which corroborate her complaints of side effects caused by her medications, including those in April 2007 that indicate that she stopped taking Darvocet and Flexeril because she was sensitive to it; (2) consider all of the evidence relating to her depression and anxiety; (3) consider that she required the ability to change positions during the administrative hearing; and (3) properly evaluate the testimony of her brother.  (*See id.* at 16-17.)  The Commissioner counters, and the court agrees, that the ALJ properly evaluated Farrell's credibility.

Once the ALJ determines that a claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34, 485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

In this case, the ALJ concluded that Farrell's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible, although he credited Farrell's complaints that "she experiences some pain with prolonged standing and/or walking and heavy lifting."  (Tr. at 23.)  The ALJ also considered the testimony of Farrell's brother as to her back pain and its effect on her daily activities.  (*See id.* at 82-86.)  The ALJ concluded that Farrell's brother was "partially credible."  (*Id.* at 23.)  In making his credibility determinations, the ALJ considered Farrell's reported

13

daily activities, her training to become a medical transcriptionist, the medical evidence of record, including the opinion evidence, and the treatment she received for her impairments, including medications. (*See id.* at 23-27.)

Contrary to Farrell's contentions, (*see* Dkt. No. 14 at 15-16), the ALJ considered the relevant factors under 20 C.F.R. § 404.1529(c), and, further, "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record."  *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))).

Although there is evidence that Farrell experienced side effects of her medications, as the ALJ properly pointed out, in September 2009 it

was noted that, despite continuing low back pain, Farrell was doing well on Lidocane patches. (*See* Tr. at 24, 468.) In addition, in May 2007 it was noted that muscle relaxants gave Farrell some relief, in May 2008 it was noted by Farrell's treating psychiatrist that Farrell had "[b]etter control over [her] pain and muscular discomfort thanks to her community physician," and in November 2008 she was "[m]anaging her pain on the Flexeril and the Darvocet." (*Id.* at 294, 356, 463.) As discussed below, the ALJ properly developed the record with respect to Farrell's mental health treatment and his determination that the results of her mental status examinations did not support her claims is supported by substantial evidence. *See infra* Part VI.D-E. Finally, although the ALJ did not mention that Farrell changed positions between sitting and standing during the administrative hearing, the court again notes that he is not required to discuss all of the evidence before him and a failure to do so does not indicate that the evidence was not considered. (*See* Tr. at 56, 82); *Craig*, 212 F.3d at 436. Moreover, the ALJ included Farrell's need to alternate positions in his RFC determination. (*See* Tr. at 22.) Ultimately, the court concludes that the ALJ properly weighed "the objective medical evidence in the record, [Farrell's] demeanor, and other indicia of credibility," and,

therefore, his credibility determination is affirmed. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Turning to the testimony of Farrell's brother, "[i]n considering evidence from 'non-medical sources' . . . such as spouses, parents, friends, and neighbors," an ALJ should "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." *See id.* In his decision, the ALJ "generally should explain the weight given to opinions from these 'other sources'" and, if he "determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons" for that determination. (*See id.*) Here, it is clear that the ALJ considered the testimony of Farrell's brother and discounted it due to the objective medical evidence, opinion evidence, Farrell's activities of daily living, and the nature of her treatment. (*See* Tr. at 23-27.) Accordingly,

the ALJ applied the appropriate legal standards in assessing the testimony of Farrell's brother.

**D.    Psychiatric Review Technique**

Farrell also claims that the ALJ failed to properly apply the special technique required for the evaluation of mental impairments.  (*See* Dkt. No. 14 at 17-20.)  In particular, Farrell contends that the ALJ failed to properly: (1) evaluate the symptoms, signs, and findings which substantiate the presence of a mental impairment; (2) rate the degree of functional limitation with respect to the four broad areas required under the Regulations; and (3) determine her mental RFC.[4]  (*See id.*)  This argument is unavailing.

An ALJ's evaluation of a claimant's mental impairments must reflect his application of the "special technique" set out in 20 C.F.R. § 404.1520a, which necessitates his consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3).  The first three areas are rated on a five-point scale:

_____

[4] As Farrell repeats her arguments with respect to the mental RFC determination in her subsequent challenge to the RFC determination as a whole, the court discusses this argument separately.  *See infra* Part VI.E.

"[n]one, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)). If the claimant's mental impairment is deemed severe, the ALJ must determine whether the impairment meets or equals the severity of a mental disorder listed in section 12.00 of the Listing of Impairments in 20 C.F.R. part 404, subpart P, appendix 1. *See* 20 C.F.R. § 404.1520a(d)(2).

Here, the ALJ determined that Farrell suffered mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation. (*See* Tr. at 22.) The ALJ based his decision on the results of mental status examinations, gaps in Farrell's treatment history, and the opinion of state agency review psychiatrist R. Weiss. (*See id.* at 20-22.)

Farrell argues that the ALJ should have obtained the treatment records referred to by physician Vinay Das in his review of her medical

conditions.  (*See* Dkt. No. 14 at 18-19; Tr. at 455-62.)  Dr. Das noted that

Farrell had been treated at St. Lawrence Psychiatric Center in the

Ogdensburg Mental Health Clinic beginning in October 1999 and was

diagnosed with depressive disorder, nonspecific type, and anxiety disorder.

(*See* Tr. at 455.)  However, the administrative record only contains

treatment notes from this facility beginning in September 2007.  (*See id.* at

356-69, 539-41.)  Notably, while the ALJ has an affirmative obligation to

develop the administrative record, his duty to do so is not without limit.

*See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y.

June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that generally, a

complete record contains a "medical history for at least the [twelve] months

preceding the month in which" the claimant files her application).  In this

case, not only did the Social Security Administration, prior to the hearing,

request and secure medical reports from St. Lawrence Psychiatric Center,

and have Farrell examined by a consulting physician, but the ALJ granted

counsel's request at the administrative hearing and held the record open

for two weeks for the submission of additional medical reports, including

mental health treatment notes.  (*See id.* at 49-50, 356-69, 539-41, 299-

301.)  Following the hearing, through a May 26, 2010 letter, the ALJ

notified Farrell that he had not yet received any such additional evidence and the record would be held open for ten more days.  (*See id.* at 212.) On July 7, 2010, the ALJ rendered his decision, noting that all additional records submitted by Farrell were included in the record and considered in making his determination.  (*See id.* at 17.)  These additional records did not include any mental health treatment notes.  (*See id.* at 555-82.)

Based on the foregoing, this court is satisfied that the ALJ fulfilled his duty to develop the record.  *See Jordan v. Commissioner of Social Security*, 142 F. App'x 542, 543 (2d Cir. 2005); *Pagan v. Astrue*, No. 11-CV-825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012).  Farrell appears to be arguing that the ALJ should have sought medical records for the eight years preceding her application.  (*See* Dkt. No. 14 at 18.) Besides the fact that the Regulations do not require such an extensive history, *see* 20 C.F.R. § 404.1512(d), the record here was sufficiently robust for the ALJ to make a disability determination without requesting additional records.  In particular, the record contains mental status examinations conducted during the relevant period which revealed that Farrell was alert, oriented, and appropriately dressed, with normal psychomotor activity and good eye contact.  (*See* Tr. at 357, 539.)

Further, her thoughts were coherent and well-organized, speech was spontaneous, relevant, and goal directed, intelligence was average, and insight, judgment, and impulse control were good. (*See id.*) In addition, Farrell's scores on intelligence testing were within the average range. (*See id.* at 300-01.)

Next, Farrell contends that the ALJ erred in failing to adopt Dr. Weiss' opinion that Farrell suffered moderate difficulties in her concentration, persistence, and pace. (*See* Dkt. No. 14 at 19-20.) As the ALJ explained, at a consultative examination conducted by licensed psychologist Richard Williams in September 2007, Farrell's mental control was good on days-of-the-week-backwards and while subtracting serial threes. (*See* Tr. at 21, 300.) Further, her attention and concentration, immediate memory, and delayed recall were good. (*See id.*) In addition, treating psychiatrist Michael Camillo noted in August 2007 and December 2009 that Farrell's attention and concentration were good, and memory was intact. (*See id.* at 357-59, 539.) The court also notes that Farrell reported watching television and playing computer games daily, and reading weekly. (*See id.* at 174-75, 200-01.) Thus, substantial evidence supports the ALJ's determination that Farrell suffered only "mild difficulties in maintaining

concentration, persistence or pace." (*Id.* at 22.)

**E.    RFC Determination**

Next, Farrell contends that the ALJ improperly determined her RFC.

(*See* Dkt. No. 14 at 21-23.)  According to Farrell, because she suffers from

depression and COPD, the ALJ should have included nonexertional

limitations related to her mental health conditions, as well as environmental

restrictions, in his RFC determination.  (*See id.* at 21-22.)  In addition,

Farrell claims that the ALJ did not acknowledge the medical evidence

suggesting she suffers limitations in her ability to bend, lift more than ten

pounds, and sit more than twenty minutes.  (*See id.* 22-23.)  On the other

hand, the Commissioner argues that the ALJ properly assessed Farrell's

RFC.  (*See* Dkt. No. 17 at 18-20.)  The court agrees with the

Commissioner.

A claimant's RFC "is the most [she] can still do despite [her]

limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC,

an ALJ must consider "all of the relevant medical and other evidence,"

including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).

With respect to mental health impairments, the ALJ must, among other

things, engage in a more detailed assessment of various functions

contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in section 12.00 of the Listing of Impairments. *See* SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Farrell retained the RFC to lift and/or carry fifteen pounds occasionally and ten pounds frequently, and, in an eight-hour day, sit for six hours and stand and/or walk for four to six hours, as long as she has the ability to occasionally change positions. (*See* Tr. at 22.) According to the ALJ, Farrell could push and/or pull fifteen pounds occasionally and ten pounds frequently, and did not suffer any postural, manipulative, communicative, or environmental limitations. (*See id.*)

As discussed previously, substantial evidence supports the ALJ's decision that Farrell's depression and anxiety are not severe impairments. In the decision, the ALJ specifically stated that, in determining the RFC, he considered the entire record and his assessment "reflect[ed] the degree of limitation [he] found in the 'paragraph B' mental function analysis." (*Id.* at

22.)  The ALJ thoroughly discussed Farrell's mental health impairments, noting that she did not treat with Dr. Camillo between August 2008 and December 2009, and, when she returned to his care, Dr. Camillo noted that Farrell was doing well, was training to be a medical transcriptionist, and did not want any medication.  (*See id.* at 20-21, 539.)  The ALJ also considered the opinion of Dr. Weiss that Farrell could understand, remember, and carry out simple instructions, make simple decisions, and interact appropriately with co-workers and supervisors, as well as the opinion of Dr. Williams that Farrell would be able to learn and perform many types of jobs.  (*See id.* at 21, 301, 386-89.)  Furthermore, the ALJ noted Farrell's reported ability to interact with others, shop, cook, clean, do laundry, and care for her personal hygiene.  (*See id.* at 23, 171-74.)  The ALJ concluded that, although Farrell alleged limitations due to, among other things, depression and back pain, he found her credible only "to the extent she experiences some pain with prolonged standing and/or walking and heavy lifting."  (*Id.* at 23.)  Ultimately, the ALJ properly considered Farrell's alleged mental health limitations and substantial evidence supports his decision to omit such limitations from the RFC determination.

With respect to Farrell's physical RFC, as previously discussed, the

objective medical evidence, as well as the opinion of Dr. Das, supports the ALJ's conclusion that COPD did not limit Farrell's ability to work. (*See id.* at 24, 257, 268, 304-05, 456, 460, 466, 468-72, 474-81, 498, 516, 542, 551, 554, 575, 585, 588.) Turning to the ALJ's failure to include postural limitations in the RFC determination, although Dr. Benton opined that Farrell could not bend from the lumbar spine, Dr. Zirn merely opined that she could not repetitively bend. (*See id.* at 436, 444.) Further, on examination by Dr. Sinha, Farrell's gait and stance were normal, her squat was full, she could walk on her heels and toes, rise from a chair without difficulty, change for the exam, and get on and off the exam table without help. (*See id.* at 303.) She had full range of motion of her cervical and lumbar spine and straight leg raising was negative. (*See id.* at 304.) Moreover, the inability to bend on a repetitive basis is not inconsistent with the ALJ's ultimate determination that Farrell could perform unskilled sedentary to light work, with the need to occasionally alternate positions. (*See id.* at 28); SSR 85-15, 1985 WL 56857 at *7 (1985) (explaining that, "if a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact"); SSR 96-9p, 61 Fed. Reg. 34,478, 34,481-82 (July 2, 1996)

(indicating that only an ability to stoop occasionally is required in most unskilled sedentary positions, and other postural limitations would not usually erode the occupational base of sedentary work). Ultimately, the ALJ's RFC determination is supported by the objective medical evidence as well as the opinion evidence, including the opinion of Dr. Romanowska that Farrell could perform sedentary work. (*See id.* at 427.)

## F.   <u>Other Work</u>

Finally, Farrell argues that testimony from a vocational expert (VE) was required to establish whether there are jobs that she can perform in the national economy. (*See* Dkt. No. 14 at 23-24.) However, as the Commissioner points out, because Farrell's nonexertional limitations do not significantly narrow the range of work which she is capable of performing, the ALJ was entitled to rely on the Medical-Vocational Guidelines to determine whether such other work exists. (*See* Dkt. No. 17 at 22-24.)

In making a step-five ruling, an ALJ may rely on the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, App. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d

Cir. 2009).  However, "if a claimant's nonexertional impairments

'significantly limit the range of work permitted by his exertional limitations'

then the grids obviously will not accurately determine disability status

because they fail to take into account claimant's nonexertional

impairments."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting

*Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).  In that case,

the ALJ should consult with a VE before making a determination as to

disability.  *See id.*  Notably, "the mere existence of a nonexertional

impairment does not automatically require the production of a [VE] nor

preclude reliance on the guidelines."  *Id.* at 603.  Instead, exclusive

reliance on the grids will only be deemed inappropriate where the

nonexertional impairments *"significantly* limit the range of work permitted

by his exertional limitations."  *Id.* at 605 (emphasis added) (internal

quotation marks and citation omitted).

As discussed above, the ALJ's determination with respect to Farrell's

RFC and credibility is sound and supported by substantial evidence.  Thus,

Farrell's arguments with respect to limitations resulting from her mental

health impairments and recurrent renal lithiasis are without merit.  (*See*

Dkt. No. 14 at 23-24.)  Although the ALJ determined that Farrell would

need to alternate between sitting and standing occasionally, he further determined that this limitation would no more than minimally limit her ability to perform unskilled sedentary jobs.  (*See* Tr. at 28.)  As the opinions of Drs. Benton, Peets, and Romanowska did not indicate that Farrell must alternate between sitting and standing, the ALJ's determination that this nonexertional limitation did not significantly erode the occupational base of sedentary to light work was supported by substantial evidence.  (*See id.* at 427, 444, 544); *Williams v. Comm'r of Soc. Sec.*, No. 7:07-CV-908, 2010 WL 2401280, at *8 (N.D.N.Y. June 10, 2010).  Thus, consultation with a VE was not required by the Regulations.  *See Bapp*, 802 F.2d at 605-06.

## G.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Farrell's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 16, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court